UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRENCE ANDERSON,<br>                Petitioner,<br><br>        v.<br><br>SUPERINTENDENT, COLETTE GOGUEN,<br>NCCI-GARDNER,<br>                Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
18-40107-TSH

## MEMORANDUM OF DECISION AND ORDER
**March 11, 2022**

**HILLMAN, D.J.**

## Background

Terrence Anderson ("Anderson" or "Petitioner") filed a Petition Under 28 U.S.C. § 2254

For Writ Of Habeas Corpus By A Person In State Custody (Docket No. 1)("Petition") against

Colette Goguen, Superintendent, North Central Correctional Institution, Gardner, MA

("Respondent"). Petitioner was convicted in Massachusetts Superior Court of three counts of

rape of a child and sentenced to 3-5 years of incarceration followed by 10 years of probation[1].

He asserts the following three grounds for relief:

> **Ground One**: The trial court erred by allowing "voluminous amounts of
> improper and prejudicial evidence and testimony to be presented to the jury in

---

[1] Petitioner has been released from prison and is currently serving his term of probation.

violation of the Petitioner's due process rights and his right to a fair trial. More specifically:

> (i) Petitioner's right to a fair trial was violated when: the trial judge admitted evidence of his prior bad acts and uncharged conduct; the complainant and prosecutor repeatedly used the term "rape"; and the prosecutor referred to him as "Uncle Terrence" in violation of the court's order.

> (ii) The trial court erred by allowing Elton D. to testify as the first complaint witness without conducting a voir dire to ensure he was the first person the complainant told of her allegation.

> (iii) The trial court erred in denying Petitioner's motion for a mistrial after Petitioner's failure to testify was deliberately highlighted by the complainant.

> (iv) The prosecutor improperly vouched for the complainant's credibility and misstated the evidence in her closing argument.

**Ground Two**: Petitioner's lawyer was not adequately prepared for trial and made several unreasonable tactical decisions thus depriving him of effective assistance of counsel.

**Ground Three**: The cumulative effect of the errors raised in Grounds One and Two requires reversal of his conviction.

### Procedural History

On November 14, 2012, a Suffolk County grand jury returned an indictment charging petitioner with three counts of rape of a child, pursuant to Mass.Gen.L. ch. 265, § 23. The case initially went to trial on June 19, 2014, but on June 25, 2014, the court declared a mistrial due to a deadlocked jury. The Petitioner was retried in the Suffolk County Superior Court in August 2014; on August 13, 2014, the jury found the Petitioner guilty on all three counts. That same day, Petitioner was sentenced to three to five years' incarceration on Count One, and ten years of probation on Counts Two and Three, to be served concurrent with each other

and after the sentence on Count One. Petitioner filed a timely notice of appeal with the

Massachusetts Appeals Court ("MAC") on September 11, 2014.  On December 20, 2016,

Petitioner moved that the execution of the remainder of his sentence be stayed pending the

disposition of his appeal. That motion was denied without prejudice, and a renewed motion was

denied on June 1, 2017.  The MAC affirmed the judgments on November 6, 2017. *See*

*Commonwealth v. Anderson*, 92 Mass. App. Ct. 1113 (2017).

On March 6, 2018, Petitioner filed an application for further appellate review

("ALOFAR") in the Massachusetts Supreme Judicial Court ("SJC"). The SJC denied further

appellate review on May 4, 2018. *See Commonwealth v. Anderson*, 479 Mass. 1105 (2018).  On

June 25, 2018, Petitioner timely filed his Petition in this Court asserting the three fully exhausted

grounds for relief listed above.

## Facts

### The Underlying Crimes

The victim was thirty-one years old when she testified in August of 2014. She

had grown up in Dorchester with her mother, stepfather, and four siblings. When she was fifteen

years old, she moved to North Carolina.  While the victim was growing up, her extended family

would often have family gatherings. Among her father's family was the Petitioner, her father's

cousin, whom she referred to as her uncle.  The victim first started noticing the Petitioner visiting

her home when she was nine or ten. She recalled that during at this time, he would have her sit

on his lap while he was rubbing her leg and kissing her neck. She recalled one instance where

she sat between his legs and "felt something hard" on her behind, which "stood out" because the

other men in her life did not touch her like that. The victim described incidents beginning when

she was eleven years old where the Petitioner would always kiss and hug her. He would take her hand and put it on his erect penis when no one else was around and tell her that she was beautiful and that he loved her.  He would also give her money either before or after he would touch her. The victim remembered one incident at a family gathering, when she was twelve years old, where the Petitioner met her at the top of the second-floor stairway in front of her parents' room. He grabbed her face and put his tongue in her mouth and took her hand and put it down his pants on his erect penis. The victim recalled the Petitioner's pressing his penis against her back, rubbing her hair, grabbing her face, and putting his tongue in her mouth. The next day he called her and asked her, "Did you tell anybody what happened last night?"  When she said she no, he replied, "Okay, because I don't want us to get in trouble. I don't want your mom and dad to be mad at you." The victim described other incidents that occurred at her house, such as when she was twelve years old, the Petitioner would come over in his car, she would get in his car, and he would take her hand, put it on his erect penis, and have her masturbate him.

When the victim was thirteen years old, she and a friend went to the train station after "Step" practice to try and get home, but they were short on money. They had enough money to reach the train station that was closer to the Petitioner's house in Roslindale but not enough to reach the station closest to where they lived. The victim called the Petitioner, and they took the train to the station closer to where Petitioner lived and walked from the train station to his house. When they arrived at the Petitioner's house, he was the only person home.  He went upstairs while the two girls sat on the couch in the living room. The Petitioner called for the victim to come upstairs, and when she reached the top of the stairs, he directed her into a bedroom with his hand. He then pulled his pants down, pulled her pants down, pulled down her underwear, and put

her on the bed.  He then performed oral sex on her, swung her around, and put his penis in her

mouth. He took her head and pushed it towards his penis, and he shoved his penis in her mouth.

Petitioner then got on top of her on the bed, put his penis into her vagina, ejaculated on her

stomach and told her he loved her. When asked how long she thought she was upstairs, the

victim was not sure of the time frame, but stated it felt like a long time.  The victim put on her

clothes and went downstairs. When the Petitioner came downstairs, he gave her twenty dollars,

and she left with her friend. Around the time that this happened, the Petitioner called the victim

on her phone and told her that he looked at her like a woman,  that he wished he could be with

her, that she was "so beautiful," and that he loved her.[2]

The victim also recalled an incident in the Petitioner's car that occurred when she was

fourteen years old, in which he exposed his penis and told her to "lick it or kiss it." During this

incident, the outside of her mouth touched his penis while his hands were on her buttocks. The

Petitioner would also show the victim pornography. One time in front of her house, while they

were in his car, Petitioner showed her a pornographic magazine and had her touch his erect penis

over his clothing. The victim recalled another instance at the Petitioner's house, where he

showed her a tape of a woman and a man having sex on the TV.

Petitioner was not charged in connection with all of the incidents to which the victim

testified. During the victim's testimony, the judge gave a comprehensive instruction regarding

the limited purpose of any evidence regarding uncharged conduct.

---

[2] This incident was the basis for the criminal charges against Petitioner.

Petitioner's Appeal

Petitioner filed a  direct appeal to the MAC raising the following claims for relief: (1) his

rights to due process and a fair trial were violated because the trial court allowed voluminous

amounts of improper, prejudicial evidence to be presented to the jury, including  permitting the

victim to testify as to uncharged conduct (prior bad acts of the Petitioner) and to use the terms

"rape" and "raped", and permitted the prosecution to refer to him as "Uncle Terrence", (2) it was

prejudicial error to permit the victim's husband to be the first complaint witness without

conducting a voir dire to determine whether the victim first disclosed the abuse to two other

relatives (as stated in the police report); (3) the trial court erred by refusing to declare a mistrial

when in response to repeated questions by defense counsel regarding why she needed money on

the day of the charged rape, the victim told her she should ask Petitioner when he testified; (4)

the prosecutor committed prejudicial error in her closing statement; (5) his defense attorney

provided ineffective assistance where she failed to prepare adequately for trial, was reprimanded

by the judge for her lack of preparation, and made several unreasonable tactical decisions; and

(6) the cumulative effect of the above-listed errors required the reversal of his convictions.

In affirming Anderson's conviction, the MAC made the following rulings relevant to the

grounds for relief raised in his Petition:

> (1) *Admission of Prejudicial Evidence.* The MAC reviewed the trial
> judge's decision to permit testimony of concerning prior bad acts for abuse of
> discretion and determined that evidence of Petitioner's "grooming behavior" had
> probative value (there was a strong logical connection to the charged conduct and
> set forth a fuller picture of the relationship between the victim and the Petitioner)
> which outweighed any prejudice. Moreover, the MAC determined that even if the
> trial judge erred by not excluding the prior bad act evidence sua sponte (Petitioner
> did not object to the evidence coming in despite it having been an issue in
> motions in limine and at the first trial), there was no substantial risk of a
> miscarriage of justice as the Commonwealth's case was strong in relation to the

charged conduct, there was circumstantial evidence to support the victim's testimony, and the prosecutor did not dwell on the prior bad acts or use it improperly during closing. The MAC further found that the victim's use of the words "rape" and "raped" over the course of her two days of testimony was not prejudicial given that the first time she used it the trial judge gave a limiting instruction to the jury informing them that they would determine whether a rape occurred. As to the prosecutor's calling Petitioner "Uncle Terrence" several times during trial despite being ordered not to by the trial judge, the MAC found no prejudicial error as the use of the name by the prosecutor occurred only in isolated instances and did not suggest bad character or criminality but instead mirrored the fact that the victim called him "Uncle Terrence."

(2) *Failure to Conduct Voir Dire of First Complaint Witness.* The MAC reviewed the trial judge's decision not to conduct a voir dire prior to the first complaint witness's testimony for abuse of discretion. The MAC noted that where there is contradictory evidence as to the first complaint witness, the trial judge should conduct a voir dire before deciding. However, in this case the trial judge had the benefit of the record from the first trial and was able to decide based on testimony of the relevant witnesses from that trial and therefore, there was no abuse of discretion.

(3) *Denial of Mistrial.* The MAC found no error in the trial judge's denial of Petitioner's motion for a mistrial when after repeated questions by defense counsel as to why she needed money on the day of the charged rape, she responded that defense counsel should ask Petitioner when he testified. Fist, the MAC found that the trial judge gave an appropriate, extensive curative instruction after the victim's comment which she repeated in her final instructions. Moreover, it was reasonable for the trial judge to conclude that the comment did not have the same prejudicial impact as it would have had if it had been uttered by the prosecution or judge.

(4) *Prosecutor's Closing Statement.* As to Petitioner's contention that the prosecutor's misstatements during her closing argument warranted reversal, the MAC found that the claim was not preserved for appeal and reviewed it under a miscarriage of justice standard. The MAC found there was no risk of a substantial miscarriage of justice as to the prosecutor's statements that the victim and other witnesses had no motive to lie first, because defense counsel repeatedly attacked their credibility in her closing statement and second, because the prosecutor's statements did not draw on her personal belief to vouch for the witnesses' credibility, but instead pointed to reasonable inferences the jury could draw from the evidence. Moreover, the prosecutor did not improperly appeal to the jury's emotions by referencing the age of the victim because the victim's age was relevant to the crime charged (statutory rape). The MAC did find that the prosecutor's statement that it was the jury's job to find the Petitioner guilty was

improper, however, the court concluded that given the trial judge's instruction that argument is not evidence and that only admitted evidence could be considered, and given the strength of the Commonwealth's case, the error did not create a substantial risk of a miscarriage of justice.

(5) *Ineffective Assistance of Counsel.* As to Petitioner's claim that he received ineffective assistance of counsel because his attorney failed to adequately prepare for trial, failed to object to the prosecutor's closing argument, and failed to object to the admission of prior bad act evidence, the MAC noted that because Petitioner raised the issue on direct appeal, the court was limited to reviewing only the trial court record and thus, he brought the challenge in its "weakest form." First, the MAC rejected Petitioner's claim to the extent that it relied on the failure to object to the prosecutor's closing argument because it had already determined there was no reversible error. The court further found that defense counsel's failure to object to the prior bad act evidence could have been a reasonable tactical decision as she attempted to use the evidence to impeach the victim. Finally, at trial, defense counsel represented that she had spent considerable time preparing. Therefore, the MAC determined that the trial court record did not support his claim and denied his appeal on this ground.

(6) *Cumulative Effect.* Having found no error, the MAC did not

specifically address this ground for relief.

Petitioner filed an ALOFAR with the SJC asserting the same grounds for relief as raised

in his direct appeal to the MAC. The SJC denied his ALOFAR.

## Discussion

### Standard of Review

The standard of review for habeas corpus petitions brought by state prisoners is set forth

in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

Under the AEDPA:

a federal court may grant habeas relief if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." This means we look to the Supreme Court's holdings, as opposed to dicta, at the time the state court rendered its decision, while employing the following criteria.

An adjudication will be contrary to clearly established law if the state
court 'applies a rule that contradicts the governing law set forth' by the Supreme
Court or 'confronts a set of facts that are materially indistinguishable from a
decision of [the Supreme Court] and nevertheless arrives at a result different from
[its] precedent.'".  On the other hand, a state court adjudication constitutes an
unreasonable application "if the state court identifies the correct governing legal
principle from the Supreme Court's then-current decisions but unreasonably
applies that principle to the facts of the prisoner's case."  An "'*unreasonable*
application of federal law is different from an *incorrect* application of federal
law,'" and a state court is afforded deference and latitude.

The second scenario justifying habeas relief is if the state court
adjudication led to "a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding."
Though this means that a federal court will be taking a closer look at a state
court's findings of fact, the fundamental principle of deference to those findings
still applies.

A "state court's determination that a claim lacks merit precludes federal
habeas relief so long as fairminded jurists could disagree on the correctness of the
state court's decision."

*Hensley v. Roden*, 755 F.3d 724, 730-31 (1st Cir. 2014)(internal citations and citations to quoted

authorities omitted)(emphasis and alterations in original). In administering these standards, the

state court's factual findings are presumed to be correct, and they can be overcome only by clear

and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Whether Petitioner is Entitled to Habeas Relief on Ground One

Anderson asserts that the trial judge erred by allowing "voluminous amounts of improper

and prejudicial evidence and testimony to be presented to the jury in violation of his due process

rights and his right to a fair trial. More specifically, he asserts that  his rights were violated when:

(i) the trial judge admitted evidence of his prior bad acts and uncharged conduct, the victim and

prosecutor repeatedly used the term "rape"; and the prosecutor referred to him as "Uncle

Terrence" in violation of the court's order; (ii) the trial judge erred by allowing Elton D. to

9

testify as the first complaint witness without first conducting a voir dire to establish that he was

the first person the complainant told of her allegations; (iii) the trial judge erred in denying his

motion for a mistrial after the complainant deliberately referred to his refusal to testify; and (iv)

the prosecutor improperly vouched for the complainant's credibility and misstated the evidence

in her closing argument.

Anderson takes the position before this Court that the MAC's decision relied solely on

state law precedent and ignored the federal nature of his claim. He argues that the MAC's

decision is, therefore, entitled to no deference and that this Court must review the claim *de novo.*

The Respondent, on the other hand, argues that as to Anderson's claim regarding uncharged

conduct, the MAC determined that such claim was procedurally defaulted because his lawyer

failed contemporaneously object to the admissions of such evidence. Furthermore, the MAC

found that Petitioner's argument that admission of uncharged evidence overwhelmed the trial

and was prejudicial was raised for the first time on appeal and therefore, was waived.[3]  As to the

claim that Anderson was prejudiced by remarks made by the prosecutor in her closing argument,

the MAC found that Anderson failed to make a contemporaneous objection, and therefore, the

claim would be reviewed under a substantial miscarriage of justice standard.  Respondent argues

that given that, the MAC determined that there was an independent and adequate state ground for

denying these claims, *i.e.,* procedural default, federal habeas review is barred unless Anderson

can establish both case and prejudice for the default, *and* that failure of this Court to review such

claims will result in fundamental miscarriage of justice, that is, conviction of one who is

innocent. Respondent further argues that federal habeas review of Anderson's claim regarding

---

[3] The MAC stated that even if it were to review the claim under a substantial miscarriage of justice standard, the

the admission of uncharged criminal conduct is barred because such claim involves issues of

purely state law which are not cognizable on federal habeas review (which is the reason that the

MAC applied only state law when addressing the claim). As to Petitioner's claim regarding the

victim's use of the term "rape" and the prosecutor's referring to him as "Uncle Terrence,"

(assuming the claim was not procedurally defaulted), and the trial court's failure to declare a

mistrial, Respondent asserts that the MAC's denial of such claims was not an unreasonable

application of or contrary to Supreme Court precedent.

> ### Whether Federal Habeas Review of Certain Claims Raised in Ground One is Barred

Petitioner contends that his right to due process and a fair trial was violated because the

trial court erroneously admitted evidence of uncharged criminal conduct and permitted the

prosecution to make prejudicial argument to the jury. First, the Court must determine the

standard of review which applies to these claims. As noted by the Respondent, the defense did

not contemporaneously object to the admission of the alleged prejudicial evidence or the alleged

prejudicial argument by the Commonwealth and therefore, these claims are procedurally

defaulted. The Massachusetts contemporaneous objection rule is regularly and consistently

enforced by the Massachusetts state courts and therefore, is an adequate and independent state

ground precluding federal habeas review. *See Hodge v. Mendonsa*, 739 F.3d 34, 44 (1st Cir.

2013)( "We have held, with a regularity bordering on the monotonous, that the Massachusetts

requirement for contemporaneous objections is an independent and adequate state procedural

ground, firmly established in the state's jurisprudence and regularly followed in its courts.")

Accordingly, Anderson must establish cause and prejudice for the default, and that he is actually

---

claim would fail as even if the judge erred, there was no substantial miscarriage of justice.

innocent, *i.e.,* admission of such evidence would result in a miscarriage of justice.  To establish

cause and prejudice, Anderson must establish that: (1) at the time of the default, the factual or

legal basis for his claim was not readily available; (2) the prosecution interfered with his ability

to comply with state procedural rules; or (3) the default was due to attorney error which

constituted ineffective assistance of counsel. *See Coleman v. Thompson,* 501 U.S. 722,  733, 111

S.Ct. 2546  (1991). To establish "actual innocence" Anderson " 'must establish that, in light of

new evidence, it is more likely than not that no reasonable juror would have found [him] guilty

beyond a reasonable doubt.' Moreover, 'actual innocence' means 'factual innocence, not mere

legal sufficiency.'" *Gaskins v. Duval*, 640 F.3d 443, 454 (1st Cir. 2011).

Before addressing whether Anderson has established the necessary showing to permit

review of his procedurally defaulted claims, however, the Court must address whether certain of

the claims  raise only state law issues which are not subject to federal habeas review, *i.e.*, his

clams that the trial judge erred by permitting prior bad act evidence, and by deciding not to

conduct a voir dire before admitting first complaint evidence**.**  I agree with the Respondent that

the asserted errors were presented to the MAC  as errors based on state law evidentiary principles

and in reviewing such claims, the MAC invoked Massachusetts state law. Accordingly, federal

habeas review of such claims is barred *See Carrington v. Commonwealth*, 490 F.Supp.3d 410

(D.Mass. 2020)(where petitioner failed to invoke federal law or federal rules of evidence and

instead argued that state court abused its discretion in admitting evidence under Massachusetts'

rules of evidence, federal habeas review is barred); *Rodriguez v. Roden*, Civ.Act. no. 13-11807-

RGS, 2014 WL 2740375 (D.Mass. Jun. 16, 2014)(whether trial court properly admitted prior bad

act evidence in accordance with Massachusetts Guide to evidence or properly applied the

common law first complaint doctrine are not claims which are cognizable on federal habeas review); *see also generally Waddington v. Sarausad,* 555 U.S. 179, 192 n.5, 129 S.Ct. 823 (2009)("it is not the province of a federal habeas review court to reexamine state-court determinations on state-law questions.").  In any event, even assuming that Petitioner framed these claims to the MAC in a manner which would make them cognizable on federal habeas review, such claims fail as for the reasons set forth below, I find that Petitioner has failed to establish cause or prejudice for defaulting such claims and has further failed to establish that failure to review such claims will result in a fundamental miscarriage of justice.[4]

Anderson does not attempt to establish cause for procedurally defaulting his claims regarding the admission of prior bad act evidence and failure to object to the prosecutor's closing argument and the record before the Court does not support a finding that the first factor (the legal or factual underpinning of the claim was not reasonably available), second factor (prosecutorial interference made compliance with state procedural rules impractical), or third factor (ineffective assistance of counsel)[5] prevented the defense from making timely objections thereto. Additionally, Anderson has not established actual innocence, that is, he has not demonstrated

[4] Federal habeas review may also be appropriate where the reviewing court has excused the waiver and addressed the federal claim on its merits. However, the MAC, after finding that Anderson had waived these claims by failing to make a timely objection, conducted only a limited review to determine whether denial of the claim would constitute a substantial likelihood of a miscarriage of justice. The First Circuit has held that a state court's review of a procedurally defaulted claim under a "substantial likelihood of a miscarriage of justice standard" does not constitute a waiver of the default by the reviewing court. *Janosky v. St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010).

[5] While in Ground Two of his Petition Anderson has brought an independent ineffective assistance of counsel claim, he has not argued that ineffective assistance of counsel was the cause of his procedural default. Additionally, as will be discussed later in this opinion, the Court finds that his ineffective assistance of counsel claim is meritless as he has failed to establish that counsel's performance was deficient such that his Sixth Amendment rights were violated, nor has he established prejudice, that is, that counsel's errors were so serious as to deprive him of a fair trial.

that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable

doubt.[6] For the reasons stated, I find that these claims are not subject to federal habeas review.

*Whether Petitioner is entitled to Relief on His Ground One Preserved Claims*

As to Anderson's claims that his right to s fair trial was violated because the victim used

the word rape[d]  six times while testifying over a two-day period and the prosecutor referred to

on a few occasions as "Uncle Terrence," little discussion is warranted. Assuming that such

claims were not defaulted[7], the MAC's finding that such references were not unduly prejudicial

was not contrary to or an unreasonable application of Supreme Court precedent.[8] Similarly, the

MAC denied Anderson's claim that his right to a fair trial was violated when the victim, after

repeatedly being asked by defense counsel why she needed money on the day of the rape,

responded that counsel should ask Anderson— which he claimed was an impermissible comment

on his right to remain silent.  The MAC noted that the prejudicial impact was far less than if the

Commonwealth or the court had made such a statement. The court then noted that the trial court

gave an extensive curative instruction which in the context, was sufficient to prevent any undue

prejudice. The MAC's determination that the trial judge's refusal to declare a mistrial under

---

[6] As the MAC pointed out in its substantial miscarriage of justice analysis (after having found that Petitioner's claims regarding improper statements made by the prosecutor in her closing arguments were not preserved), it is unlikely that any improper remarks by the prosecutor changed the outcome of the trial given the evidence of his guilt.

[7] Anderson's counsel objected only the first time the victim used the word "rape" which resulted in the trial judge giving a limiting instruction, and as to the prosecutor's use of "Uncle Terrence," while no contemporaneous objection was made, in a pre-trial ruling, the judge barred the prosecution from referring to him as "Uncle Terrence."

[8] More specifically, the MAC determined that the victim's use of term "rape" on a few occasions during her two days of testimony did not result in any prejudice to the Defendant given the court's limiting instruction that the determination of whether a rape occurred was ultimately the jury's decision. As to the prosecutor's having called Anderson "Uncle Terrence" on a few isolated occasions, read in context, such references "simply mirrored" how the victim had referred to him and therefore, was not unduly prejudicial.

14

these circumstances was not contrary to or an unreasonable application of Supreme Court

precedent.

*Whether Petitioner is Entitled to Habeas Relief on  Ground Two*

In Ground Two of his Petition, Anderson asserts that his right to effective assistance of

counsel was violated in violation of his Sixth Amendment rights because his lawyer was not

adequately prepared for trial (and was admonished by the trial judge for her lack of preparation)

and made several unreasonable tactical decisions, such as failing to object to the prosecutor's

closing statement. To establish that his Sixth Amendment right to effective assistance of counsel

was violated, Petitioner must establish that counsel's performance was objectively unreasonable,

*and* prejudice, *i.e.,* that there exists "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland v.*

*Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984).

The MAC noted that Petitioner opted to proceed based on the trial record and therefore,

the factual support for his claim must appear indisputably on the trial record.[9] The MAC found

that Petitioner had not met his burden to establish that the record indisputably supported his

claim. More specifically, the MAC found that counsel failure to object to the prosecutor's

closing argument did not amount to ineffective assistance of counsel because it was reasonable

---

[9] While in his Petition Anderson requested an evidentiary hearing as to all claims, he did not address the necessity for an evidentiary hearing in his memorandum of law in support of the Petition. Accordingly, as noted by the Respondent, it is unclear what witnesses he would call and what evidence he would seek to illicit to support his claims, nor is it clear as to how any such testimony or evidence would assist him in prevailing on his claims. Additionally, there is no evidence in the record that he requested an evidentiary hearing before the state court and was denied. On the contrary, it is clear from Petitioner's brief to the MAC that he chose to simply rely on the record as it existed despite the MAC having stayed ruling on the appeal for a year to permit Petitioner to explore whether to file a motion for new trial. Petitioner chose not to do so despite the fact that such a collateral proceeding would have afforded him the opportunity to seek an  evidentiary hearing on all his claims and, in particular, his ineffective assistance of counsel claim. In fact, the MAC noted that had Petitioner filed a motion for new trial, he would have

15

that counsel did not object given, as the MAC had already found, only one of the prosecutor's

comments was arguably improper and that comment was not likely to have created a substantial

miscarriage of justice (given the trial judge's instructions and the strong evidence of Petitioner's

guilt). As to defense counsel's decision to impeach the victim with prior bad act evidence (as

opposed to seeking to exclude it), the MAC found that tactical decision to be virtually

unchallengeable. Petitioner also asserts that counsel's performance was deficient because it was

evident she had not adequately prepared for trial.  It is true that the trial judge admonished

defense counsel on a couple of occasions for being inadequately prepared, however, counsel

represented that she had spent considerable time preparing Petitioner's case. The MAC

concluded that counsel's performance, while not perfect, was sufficiently effective.  On the

record that was before the MAC (and that is before me), I cannot find that the MAC's

determination was an unreasonable application of or contrary to *Strickland*. Accordingly, he is

not entitled to habeas relief on Ground Two of his Petition.

<u>*Whether Petitioner is Entitled to Habeas Relief on  Ground Three*</u>

     In Ground Three of his Petition, Anderson asserts that the cumulative effect of the errors

previously discussed undermined the fairness of his trial. The MAC  denied Anderson's appeal

after determining that his claims were either procedurally defaulted (and there was no substantial

miscarriage of justice), or that there was no error. Accordingly, the Court did not address

Petitioner's claim that the cumulative effect of all of the asserted errors prejudiced him and

caused a substantial miscarriage of justice. Petitioner's argument to the MAC in support of this

claim consisted of a single conclusory sentence and a citation to a state law case, *Commonwealth*

---

been better able to develop a record regarding counsel's performance. Under these circumstances, Petitioner's

*v. Cancel*, 394 Mass. 567, 576 (1985). Even assuming that Petitioner preserved this claim by

summarily asserting that his federal due process right to a fair trial was violated as the result of

the cumulative effect of the errors which he alleges permeated his trial, his claim must fail as the

Court has found no error.[10] *See Avila v. Clarke,* 938 F. Supp. 2d 151, 176 (D. Mass. 2013)(this

court concludes that where the court has found that petitioner has failed to establish

constitutional error regarding any of his claims for habeas relief, there is no need to address his

cumulative error claim).

## Conclusion

For the foregoing reasons, the Petition Under 28 U.S.C. § 2254 For Writ OF Habeas

Corpus By A Person In State Custody (Docket No.1), is ***denied***.

## Certificate of Appealability

The statute governing appeals of final orders in habeas corpus proceedings provides that

an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability."

28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a

"substantial showing," a petitioner must demonstrate that "reasonable jurists could debate

whether . . . the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529

U.S. 473, 484, 120 S.Ct. 1595 (2000) (internal quotation marks omitted). This is a low bar; a

claim can be considered "debatable" even if every reasonable jurist would agree that the

petitioner will not prevail. *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029 (2003).  In

---

request for an evidentiary hearing if not deemed waived, is denied.

ruling on an application for a certificate of appealability, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

I grant the certificate of appealability with respect to Ground Two of the Petition, i.e., ineffective assistance of counsel claim. I do so because although I have rejected Petitioner's legal arguments and his request for an evidentiary hearing regarding this claim, he has made a substantial showing of the denial of a constitutional right. Moreover, reasonable jurists could disagree with my conclusions. I also find that or that the issues presented were adequate to deserve encouragement to proceed further.  Therefore, issuance of a certificate of appealability as to this claim is appropriate. However, I deny the certificate of appealability with respect to Petitioner's remaining claims, *i.e.*, his first ground for relief alleging various evidentiary errors, errors related to prosecutorial comments, and error related to the trial judge's refusal to declare a mistrial, and his third ground for relief alleging that cumulative error prejudiced him and caused a substantial miscarriage of justice. I have found such claims to be procedurally defaulted, not cognizable on federal habeas review, or that the MAC's determination of no error was not contrary to or an unreasonable application of Supreme Court precedent. Under the circumstances, I do not find that reasonable jurists could debate whether these claims were adequately addressed by the Court, nor are   the issues presented adequate to deserve encouragement to proceed further.  Therefore, with respect to this claim, the certificate of appealability is denied.

    **So Ordered.**                     **/s/ *Timothy S. Hillman***
                                                TIMOTHY HILLMAN
                                                DISTRICT JUDGE

---

[10] Because the MAC did not address this claim, my review is *de novo*.